UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUNT CONSTRUCTION GROUP, INC.,

    Plaintiff/Counter-Defendant,

v.

CONSTRUCTION SERVICES, INC.,

    Defendants/Counter-Plaintiff/
        Third-Party Plaintiff,

v.

ST. PAUL FIRE & MARINE INS. CO.
et al.,

      Third-Party Defendants.

_____/

CIVIL CASE NO. 02-40126

HONORABLE PAUL V. GADOLA
U.S. DISTRICT JUDGE

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT CSI'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART
PLAINTIFF HUNT'S MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

This action involves a contract dispute between two
corporations: Plaintiff Hunt Construction Group, Incorporated, and
Defendant Construction Services, Incorporated.  The parties bring
claims against each other for contractual and quasi-contractual
remedies.  Before the Court are two motions and their voluminous
exhibits: (1) Defendant CSI's motion for summary judgment on
Plaintiff's complaint, and (2) Plaintiff Hunt's motion for summary
judgment on Defendant's counterclaims.  The Court held a hearing

on these motions on September 15, 2004. Based on the plain language of the subcontract agreement and various releases, the Court will deny Defendant CSI's motion for summary judgment on Plaintiff's complaint and will grant in part and deny in part Plaintiff's motion for summary judgment on Defendant CSI's counterclaims.

**II. BACKGROUND**

This action arises out of the construction of the Midfield Terminal Project at Detroit Metropolitan Airport. Plaintiff Hunt Construction Group, Incorporated ("Plaintiff Hunt") was the general contractor on the project. Plaintiff Hunt entered into a subcontract with Defendant Construction Services, Incorporated ("Defendant CSI") for certain ornamental metal work, such as the column covers and wall covers throughout the terminal, as well as for glass railings and other work. The subcontract agreement, a document of over 40 pages, essentially provided that Defendant CSI agreed to supply and install various items for a fixed price of $14,405,052.00. The agreement was executed by both parties: Defendant CSI signed the contract on April 24, 2000 and Plaintiff Hunt signed the contract on May 8, 2000.

The work by Defendant CSI was not finished by the deadline. The parties dispute the causes of the delay. Plaintiff Hunt, the general contractor, terminated Defendant CSI for default and

2

subsequently completed some of the work that Defendant CSI had agreed to complete.

Plaintiff Hunt brought suit against Defendant CSI alleging various breaches of the subcontract agreement, including Defendant CSI's alleged failure to supply materials, failure to complete the work, failure by Defendant CSI to pay sub-subcontractors and suppliers, failure to meet work schedules and "turnover milestones," failure to submit required reports, failure to provide on-site supervision and staffing, and failure to clean its work area. <u>See</u> Complaint. Defendant CSI now seeks summary judgment on all counts in Plaintiff Hunt's complaint.

Defendant CSI also filed a counterclaim in this action. The counterclaim seeks damages for the following counts: that Hunt had "superior knowledge" of the project that it did not disclose, quantum meruit, breach of warranty of specifications, breach of duty to issue equitable adjustment, breach of contract, total excess cost claim, and declaratory judgment. Plaintiff Hunt seeks summary judgment on all counts in Defendant CSI's counterclaim.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

3

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Martin v. Ohio Turnpike Comm'n, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).  The Court is not required or permitted, however, to judge the evidence or make findings of fact. Id. at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  Id. at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

4

nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. <u>Id.</u>; <u>Feliciano v. City of Cleveland</u>, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted); <u>see</u> <u>Celotex</u>, 477 U.S. at 322-23; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. <u>Lucas v. Leaseway Multi Transp. Serv.,</u>

5

Inc., 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), aff'd, 929 F.2d 701 (6th Cir. 1991).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Cox v. Ky. Dep't of Transp., 53 F.3d 146, 150 (6th Cir. 1995).

**IV.   ANALYSIS**

At the outset, the Court notes that jurisdiction is proper in this matter based on the Court's diversity jurisdiction under 28 U.S.C. § 1332.  The parties agree that Michigan law governs this diversity case.  See Subcontract at § 34.1.  This dispute between Plaintiff Hunt, a general contractor, and Defendant CSI, a subcontractor, requires the Court to interpret the subcontract agreement.

**A.  Defendant CSI's Motion for Summary Judgment**

Defendant CSI seeks summary judgment on all counts in Plaintiff Hunt's complaint.  Defendant CSI argues that Plaintiff Hunt's claims are barred because Plaintiff Hunt substantially breached the contract first.  Defendant CSI argues in its brief that under Michigan law, "he who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform." Ehlinger v. Bodi Lake Lumber Co., 324 Mich. 77, 89 (1949) (citing Jones v.

6

<u>Berkey</u>, 148 N.W. 375, 378 (Mich. 1914) (citation omitted)); <u>see</u> CSI Br. at 12.  Defendant CSI then focuses its arguments on the facts, attempting to demonstrate that Plaintiff Hunt substantially breached the subcontract first.  <u>See</u> Pl. Br. at 1-9.  Before the Court reaches the facts, however, the Court must first determine whether this general principal of Michigan law applies to this case.

To analyze this argument, the Court begins with the language of the subcontract agreement.  Michigan law permits a party to waive a specific right through a contract; as the Michigan Supreme Court noted, "a contract may waive constitutional or statutory rights or may change an established rule of law."  <u>Wilkes v. Allegan Fruit & Produce Co.</u>, 233 Mich. 215, 218, 206 N.W. 483, 484 (1925).  In this case, the subcontract agreement contained a clause requiring Defendant CSI to continue to perform <u>even if</u> disputes arose between the parties:

> **Obligation to Continue Work.**  Regardless of any claims or disputes, or any action taken or to be taken under any Section of this Subcontract with respect to such claims or disputes, whether for an extension of time or for additional compensation or otherwise, [Defendant CSI] at all times shall proceed diligently with the prosecution of its work.

Subcontract at § 21.1.  Thus, by signing the subcontractor agreement, Defendant CSI executed a contract that required Defendant CSI to "proceed diligently with the prosecution of its

7

work" even if it had "any claim," including a claim for breach of contract against Plaintiff Hunt.   <u>Id.</u>   The Court finds this contractual language to be unambiguous.   Consequently, Defendant CSI cannot be relieved of its duty to perform based on the general principal of Michigan law cited above; Defendant CSI had a duty to perform under the subcontract agreement regardless of Plaintiff Hunt's conduct, and could breach the agreement by failing to perform.   In other words, the specific language of the subcontractor agreement required Defendant CSI to continue to perform under the contract.

The plain language of the contract is dispositive of the issues raised in Defendant CSI's motion for summary judgment. Consequently, Plaintiff Hunt's claims survive the motion for summary judgment.   Alternatively, even if the plain language were not dispositive of the issues, there are genuine issues of material fact regarding whether the parties breached the subcontract. <u>See</u>, <u>e.g.</u>, Hunt Resp. Br. at 5-14; CSI Br. at 1-9.   Plaintiff Hunt claims that the delays and breaches were the fault of Defendant CSI because, for example, CSI underestimated the labor costs for the job, CSI failed to provide the required on-site representative as required by the subcontract agreement, and because CSI failed to deliver materials to the site on time.   In contrast, Defendant CSI claims that the alleged breaches were caused by, for example,

8

delays caused by other subcontractors, and by Plaintiff Hunt's withholding of information, misleading and changing schedules, prohibiting access to the work site at certain times, and change orders.

Defendant CSI argues that there is no genuine issue of material fact because the affidavit of Tom Place, president of CSI, is allegedly unrebutted. The affidavit, however, contains conclusions of law that cannot supersede this Court's conclusions of law and interpretation of the contract. Furthermore, the Sixth Circuit has stated that "[a]ffidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded." State Mut. Life Assurance Co. of Am. v. Deer Creek Park, 612 F.2d 259, 264 (6th Cir. 1979). The affidavit by Tom Place contains, in part, legal conclusions and conclusory, one-sided statements of fact. The affidavit does not overcome the genuine issues of material facts illustrated in both parties' voluminous exhibits.

Based on the above analysis, the Court concludes that Defendant CSI's motion for summary judgment should be denied. To summarize, Defendant CSI argues that it is entitled to summary judgment because Plaintiff Hunt allegedly substantially breached the contract first and is therefore prohibited from bringing an action for breach of contract. In the subcontractor agreement,

however, Defendant CSI agreed to continue performing regardless of any claim for breach against Plaintiff Hunt.  Therefore, Plaintiff Hunt may bring a claim for breach of contract; the breach of contract claim is not precluded.  Alternatively, there are genuine issues of material fact that warrant the denial of Defendant CSI's motion for summary judgment.  In this complex dispute, each party has presented different evidence as to the cause of the delays and the breach.  This is the province of a fact finder and cannot be resolved as a matter of law.  Therefore, the issues brought in Plaintiff Hunt's complaint will proceed to trial.

**B.   Plaintiff Hunt's Motion for Summary Judgment**

Plaintiff Hunt seeks summary judgment on all counts in Defendant's counterclaim.  Specifically, Defendant CSI's counterclaim seeks damages for the following counts: (1) that Hunt had "superior knowledge" of the project that it did not disclose, (2) quantum meruit, (3) breach of warranty of specifications, (4) breach of duty to issue equitable adjustment, (5) breach of contract, (6) total excess cost claim, and (7) declaratory judgment.  Plaintiff Hunt argues that each of Defendant CSI's claims are barred by the plain language of certain "Affidavits and Partial Waivers of Claims and Lien and Release of Rights" ("releases") and based on various clauses in the subcontract agreement.  Based on the plain language of the releases and of the

subcontract, the Court will grant in part and deny in part Plaintiff Hunt's motion for summary judgment.

In order to receive partial progress payments, Defendant CSI agreed under the subcontract to follow a specific procedure.  <u>See</u> Subcontract § 5.2.  Specifically, the subcontract provided that Defendant CSI would submit "itemized progress payment applications on forms approved by [Plaintiff Hunt]."  <u>Id.</u>  The subcontract further stated that such forms would include "sworn statements and lien waivers from [Defendant CSI] to a specified date" and "a fully-executed Affidavit and Partial Waiver of Claims and Lien and Release of Rights."  <u>Id.</u> at § 5.2(a)(2),(6).  The language of the release form stated, in part:

> [Defendant CSI] hereby waives, releases and relinquishes any and all claims, rights, or causes of action whatsoever arising out of or in the course of the work performed on the above-mentioned project, contract or event transpiring prior to the date hereof, excepting the right to receive payment for work performed and properly completed and retainage, if any, after the date of the above-mentioned payment application or invoices.

<u>See</u> Pl. Hunt Ex. D.  Defendant CSI executed thirteen of these releases to obtain payment.  <u>Id.</u>  The latest of these was executed on September 3, 2001.  <u>See</u> Pl. Ex. E.  After September 3, 2001, Defendant CSI began to alter the releases before signing them, by crossing out the entire paragraph quoted above, and by editing other language.  <u>See</u> Pl. Hunt Ex. G.

11

The Court will first address the claims that are excepted from this waiver.  The plain language of the release states that on the date that Defendant CSI signed the release, Defendant CSI waived and released Plaintiff Hunt from "all claims," "excepting the right to receive payment for work performed and properly completed and retainage, if any."  <u>See</u> Pl. Hunt Ex. D.  This clause, read in context, means that the only claims that Defendant CSI did not release were (1) for payment of work performed and completed before September 3, 2001, (2) for retainage, or (3) for a claim that arose on or after September 3, 2001.  Notably, the parties agree "that CSI did not release the net value of change orders 10-15" or the retainage by signing the releases.  <u>See</u> Pl. Hunt Reply at 2.

The Court must determine, however, whether Defendant CSI's contested claims arose prior to September 3, 2001, and would therefore fall within the release's exception.  Plaintiff Hunt has provided exhibits, which appear to be Defendant CSI's own creation, which state that many of Defendant CSI's claims arose before September 3, 2001.  <u>See</u> Pl. Ex. H, I; <u>see also</u> Ex. F (Dep. of CSI Pres.) at 153.  Additionally, Defendant CSI's president states in his affidavit that "I learned shortly after [the] contract award that Hunt did not intend to abide by the terms of the Subcontract."  Def. Ex. 1 at ¶ 5.  The subcontract was executed by Defendant CSI on April 24, 2000, well before September 3, 2001.  Furthermore,

12

CSI's president stated that he informed Plaintiff Hunt in writing on July 31, 2001 that the delays were causing a 3 to 4 million dollar overrun in labor costs alone.  Id. at ¶ 17; Def. Ex. O. Finally, on April 27, 2001, Defendant's president submitted

> formal written notice that it is our intent to file a claim for excessive changes in the work, delays and disruptions to our work by others, and failure on behalf of the others to properly coordinate the work of the trades on the project.  This claim will be retroactive to include, but not be limited to, all fabrication work and installation activities.

Def. Ex. I at 11664.  Yet even after submitting this formal written notice, Defendant CSI continued to sign the releases.

The Court determines that the releases bar these claims that arose before the execution of the final unaltered release on September 3, 2001.  The Honorable George E. Woods, in a case involving the same release language similarly concluded that "[t]he Partial Waiver released all other claims and causes of action." Johnson Controls, Inc. v. Hunt Construction Group, Inc., No. 02-74039 (Aug. 13, 2004 Order) (Woods, J.).  The Court finds that the language of the releases disposes of Defendant CSI's counterclaims, excepting any claims arising after September 3, 2001.

Alternatively, the Court will consider the merits of each counterclaim.  Even if the releases did not bar Defendant CSI's counterclaims prior to the September 3, 2001, the language of the subcontract would also preclude the counterclaims, with the

exception of the claim for breach of contract.  The Court will
review each of the counts in Plaintiff's counterclaim below.

Defendant CSI's first count is for "superior knowledge."
Defendant CSI alleges that Defendant CSI lacked plans and
information when it entered into the subcontract. The subcontract,
however, explicitly states to the contrary:

> **[Section] 3.5 Familiarity With Jobsite Conditions:**
> [Defendant CSI] represents that it has:
>
> (a)  carefully examined this Subcontract  and the
>      Contract Documents and understands their respective
>      provisions;
>
> (b)  visited the jobsite;
>
> (c)  investigated and satisfied itself with respect to
>      [ten provisions including a variety of conditions
>      including weather, law, personnel, and] any other
>      factor(s) which may affect [Defendant CSI's] Work
>      under this subcontract; and
>
> (d)  correlated its observations with the requirements
>      of this Subcontract and the Contract Documents.
>
> **[Section]  3.6  Reliance  by  Subcontractor  on  Own
> Investigation:** [Defendant CSI] has entered into this
> Subcontract on the basis of its own examination,
> investigation and evaluation of the matters [], and is
> not relying upon any representations of [Plaintiff
> Hunt], the Owner, the Designer, or any of their
> respective agents or employees except to the extent such
> representations are expressly stated in this Subcontract
> [].  Failure or refusal to properly consider and
> evaluate the factors set forth in Section 3.5 shall not
> relieve [Defendant CSI] from its responsibility for
> properly estimating the difficulty, cost and expense of
> successfully performing its Work.

Subcontract at § 3.5-3.6.  In this subcontract language, Defendant

14

CSI accepts the duty to rely on its own investigation and knowledge.

Defendant CSI then argues that Michigan law does not permit a contractor "to circumvent the implied duty [to inform bidders of the nature and scope of the work] by contract language requiring the bidder to make its own inspections, requiring the bidder to assume the risk of non-discovery, or disclaiming the accuracy of the information." Performance Abatement Servs., Inc. v. Lansing Bd. of Water and Light, 168 F. Supp. 2d 720, 734 (W.D. Mich. 2001). This case from a federal district court bases this conclusion on several Michigan cases. Those Michigan cases, however, do not have such extensive, explicit language as is contained in the subcontract at issue in this case and involve natural conditions such as soil quality. Earl L. Reamer Co. v. City of Swartz Creek, 76 Mich. App. 227, 256 N.W.2d 447, 450 (1977) (note limiting concurrence), Hersey Gravel Co. v. State Highway Department, 305 Mich. 333, 9 N.W.2d 567, 569 (1943) (note dissenting opinion), Valentini v. City of Adrian, 347 Mich. 530, 79 N.W.2d 885, 888-91 (1956), and W.H. Knapp v. Michigan, 311 Mich. 186, 18 N.W.2d 421, 426 (1945). The Court finds these cases to be distinguishable. Furthermore, as noted previously, parties may waive certain rights through a contract. Wilkes, 233 Mich. at 218, 206 N.W. at 484 ("a contract may waive constitutional or statutory rights or may change

15

an established rule of law"). Because of this principle articulated in <u>Wilkes</u> and the plain language of the contract, the Court determines that Defendant CSI's claim against Plaintiff Hunt for "superior knowledge" fails. The Court will therefore grant summary judgment to Plaintiff Hunt on this counterclaim.

Defendant CSI next brings a claim for quantum meruit, an equitable, quasi-contractual claim. The Michigan Court of Appeals has stated that "[q]uasi-contractual theories of recovery are precluded where the parties are bound by an express contract which governs the matter at issue." <u>Chrysler Corp. v. Diclemente Siegel Engineering</u>, No. 184700, 1996 Mich. App. LEXIS 1693 (Dec. 20, 1996) citing <u>Martin v. East Lansing School District</u>, 193 Mich. App. 166, 180; 483 N.W.2d 656 (1992). Defendant CSI's claim is not permitted because the parties had an express contract. The subcontract provided that "without limitation . . . [Defendant CSI] shall pay for all cost of the performance of all its obligations under this Subcontract, even if those costs exceed the Subcontract price." Subcontract at § 3.2. The contract is valid, and Defendant CSI's attempts to circumvent the contract fail.

Defendant CSI next argues that Michigan law allows for recovery under quantum meruit for "extras." <u>Performance Abatement Servs.</u>, 168 F. Supp. 2d at 736. The issue of "extras," however, only arises if the alleged "extras" were not "contemplated by the

16

Subcontract." <u>Id.</u>  In this case, the subcontract is comprehensive and addresses change orders and additional overtime.  The Court does not find Defendant CSI to bring claims that were not contemplated under the subcontract.  The Court will therefore grant summary judgment to Plaintiff Hunt on the counterclaim for quantum meruit.

Defendant CSI next brings a claim for "breach of warranty of specifications."  Defendant CSI specifically complains that Plaintiff Hunt warranted the schedule of the work and the sequence in which the work of others would be performed on the project.  The Subcontract agreement, however, specifically stated that Plaintiff Hunt

> **[Section] 9.4 Priority of Work:** [Plaintiff Hunt] shall have the right at any and all times to modify the Project Schedule, to suspend, delay, or accelerate, in whole or in part, the commencement or execution of [Defendant CSI's] Work or any portion thereof or to vary the sequence thereof, to reasonably decide the time, order and priority of the various portions of [Defendant CSI's] Work, and all other matters relating to the scheduling and coordination of [Defendant CSI's] work on the Project.  As the Project progresses, [Plaintiff Hunt] also shall have the right to modify the time, order and priority of the various portions of [Defendant CSI's] Work, and all other matters relating to the scheduling and coordination of [Defendant CSI's] Work, in order to respond to job conditions and/or achieve timely completion of the entire Project. [Defendant CSI] shall not be entitled to any additional compensation for decisions or changes made by [Plaintiff Hunt] pursuant to this Section 9.4, except as provided in Section 9.7.

Subcontract at § 9.4.  Section 9.7 then addresses the costs for

17

overtime and additional shifts, allocating those costs to the parties according to certain conditions. The Court determines that Section 9.4 negates Defendant CSI's claim that Plaintiff Hunt "warranted that certain work of others would be performed in a specified sequence." Def. CSI Counterclaim at 13; see also Subcontract § 3.6, 3.7. The subcontract did not bind Plaintiff Hunt to a particular sequence of work. Plaintiff Hunt retained the right under the subcontract to change the sequence and priority of Defendant CSI's work "in whole or in part." The Court will therefore grant summary judgment to Plaintiff Hunt on this counterclaim.

Defendant CSI's next counterclaim is for "breach of duty to issue equitable adjustment." Defendant CSI claims that under Section 13 of the subcontract, Plaintiff Hunt agreed to equitably adjust its payments to Defendant CSI. Section 13 of the subcontract, the only section cited to in this count of the counterclaim, appears to be irrelevant. The section requires Defendant CSI to "use all means necessary to discovery any defects" in the work of other subcontractors and "report promptly any such improper conditions and defects to" Plaintiff Hunt. Subcontract § 13. The section does not provide for a duty of equitable adjustment, nor even any reference to pricing or compensation. Therefore, Defendant CSI's counterclaim for equitable adjustment

18

premised on this section of the subcontract will be denied. Furthermore, the subcontract provides explicit procedures for requesting additional compensation.  <u>See</u> Subcontract § 18.3. Therefore, equitable remedies outside of the subcontract would contravene the plain language of the subcontract.  The Court will therefore grant summary judgment to Plaintiff Hunt on this counterclaim.

Defendant CSI also brings a "total excess cost claim."  This, as Defendant CSI admits in its brief, is a "time tested theor[y] for proving damages in a construction case."  Def. Resp. Br. at 9. Thus, this "claim" is a theory of damages, not an independent cause of action.  The Court will therefore grant summary judgment to Plaintiff Hunt on this count, since it is not properly an independent claim.  In so holding, the Court does not reach the issue of the proper theory for the calculation of damages, if any, that may subsequently be awarded for other counts in this case.

Defendant CSI next brings a count for "declaratory judgment." In this count, Defendant CSI requests this Court to declare the contractual provisions "that tend to absolve Hunt from delaying to project and requiring CSI to indemnify Hunt . . . to be unconscionable and unenforceable as against public policy." Counterclaim at ¶ 44.  Neither the counterclaim nor Defendant's response brief cites to specific contractual provisions, which

would have facilitated this Court's review of this claim.   The
Court does not find this contract, which two sophisticated parties
entered into and which involved over $14,000,000.00, to be
unconscionable or against public policy.   Defendant CSI was free
not to execute this subcontract.   Even though the subcontract is
comprehensive and strongly favors Plaintiff Hunt, Defendant CSI
executed the subcontract and is bound by its provisions.   The Court
will not release Defendant CSI from the subcontract's consequences
based on public policy or hindsight.   The Court will therefore
grant summary judgment to Plaintiff Hunt on this counterclaim.

Finally, the Court will address Defendant CSI's counterclaim
for breach of contract.   As discussed above, the Court concluded
that any of Defendant CSI's claims that arose prior to September
3, 2001 have been released.   See supra.   The counterclaim for
breach of contract refers to issues that existed "throughout
contract performance" as well as to issues that arose on specific
dates, such as "[o]n October 4, 2001."   Counterclaim at ¶ 32.   A
genuine issue of material fact remains regarding which party caused
the alleged delays that resulted in, for example, the necessity for
CSI to add manpower.   Subcontract § 9.7, 10.1, 10.2.   Such claims
therefore survive summary judgment.   Consequently, any of Defendant
claims that arose after September 3, 2001 shall proceed.

Because the plain language of the release and the fact that

20

Defendant CSI's counterclaims arose before the execution of the release, the Court concludes that Plaintiff Hunt's motion for summary judgment will be granted on all claims, except for breach of contract as specified above.  Therefore, the Court will grant in part and deny in part Plaintiff Hunt's motion for summary judgment on Defendant's counterclaims.

**V.  CONCLUSION**

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant CSI's motion for summary judgment on each of the claims in Plaintiff Hunt's complaint [docket entry 24] is **DENIED**.  Plaintiff Hunt's claims remain pending before the Court.

**IT IS FURTHER ORDERED** that Plaintiff Hunt Construction Group, Incorporated's motion for summary judgment on Defendant CSI's counterclaims [docket entry 32] is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the Court grants Plaintiff Hunt summary judgment on all Defendant CSI's counterclaims, except for the breach of contract counterclaims that arose after September 3, 2001.  Only Defendant CSI's counterclaims for breach of contract that arose after September 3, 2001 remain pending before the Court.

**SO ORDERED.**

Dated: June 30, 2005                    s/Paul V. Gadola
                                        HONORABLE PAUL V. GADOLA
                                        UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on  July 6, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
  Mary C. Dirkes, Thomas H. Walters                                      , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  Michael F. Conley, Matthew C. Norris, Jose M. Pienknagura      .

s/Julia L. Delling
Julia L. Delling, Case Manager
(810) 341-7845

22